**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
**Norah Van Dusen**, OSB No. 180114
Email: norah@lmhlegal.com
**Sara Long**, OSB No. 224433
Email: saralong@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Rebecca J. Roe**, WSBA No. 7560
Email: roe@sgb-law.com
**Hong Jiang**, WSBA No. 51914
Email: jiang@sgb-law.com
**Benjamin C. Gauen**, WSBA No. 41815
Email: gauen@sgb-law.com
Schroeter Goldmark & Bender
401 Union Street, Suite 3400
Seattle, Washington 98101
Telephone: (206) 622-8000
Facsimile: (206) 682-2305
*Applications for Pro Hac Vice Forthcoming*

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **BRANDON DIXON**,<br><br>              Plaintiff,<br><br>    vs.<br><br>**OREGON YOUTH AUTHORITY, MARCIA ADAMS, DAN BERGER, DIANA MARTINEZ, JAMES SHELLEY, FARIBORZ PAKSERESHT, JOSEPH O'LEARY, COURTNEY NUORALA, A.KA. COURTNEY SCHNITZER**,<br><br>              Defendants. | Case No.  6:26-cv-01364<br><br>**COMPLAINT**<br>**Civil Rights Violation**<br>**Cruel and Unusual Punishment**<br>**(42 U.S.C. § 1983)**<br><br>**Oregon Tort Claims Act**<br>**(Or. Rev. Stat. § 30.260 *et seq*)**<br>**Professional Negligence**<br><br>**Jury Trial Demanded** |

COMPLAINT - 1
(Case No. 6:26-cv-01364)

**NATURE OF ACTION**

The Oregon Youth Authority ("OYA") employed Dr. Edward Gary Edwards for more than four decades as the primary physician at the MacLaren Youth Correctional Facility ("MacLaren") in Woodburn, Oregon. During that time, Edwards abused vulnerable young men under the guise of providing medical care. Plaintiff is one of his victims.

Plaintiff was incarcerated at the Oregon Youth Authority between 2010 and 2017. OYA placed him at MacLaren from approximately 2016 to 2017. During that time, he received one or more "medical examinations" from Edwards. During these "exams," Edwards subjected Plaintiff to genital touching, including fondling, masturbation, and digital anal penetration under the guise of legitimate medical care. This conduct was medically unnecessary and sexually motivated.

Edwards' conduct made Plaintiff uncomfortable, but he did not immediately perceive the conduct to be abusive, because Edwards was the primary doctor at MacLaren, the exams took place in the MacLaren medical clinic, and Plaintiff was aware that Edwards touched all youth in the same manner.  When Plaintiff questioned staff about the medical necessity of Edwards' exam procedures, staff either ignored Plaintiff's concerns or falsely informed him that Edwards was a contracted employee and OYA could not do anything about him.

In 2016, Plaintiff encountered Courtney Schnitzer, a.k.a. Courtney Nuorala, a temporary OYA staff member who worked as a group life coordinator on Plaintiff's living unit. In 2017, Schnitzer sexually abused Plaintiff by engaging in sexual intercourse with him in the kitchen of his living unit, utilizing a "blind spot" in the camera system to shield her actions.

In the summer of 2025, Plaintiff learned of news stories about abuse allegations against Edwards. Plaintiff learned that Edwards' predatory abuse spanned decades, Edwards was in fact an OYA employee, and OYA had long had knowledge of complaints from youth and parents about

COMPLAINT - 2
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Edwards. It was only as the news stories came to light that Plaintiff began to realize he had been the victim of sexual abuse rather than merely uncomfortable medical exams and that OYA had failed in its duty to protect Plaintiff and other youth in OYA custody.

Individual Defendants in this case include former OYA Directors and MacLaren Superintendents, whose acts (and failures to act) enabled Edwards' abuse to persist unabated for decades, including from 2016 to 2017 when Plaintiff was in their care. The individual Defendants' actions deprived Plaintiff of his fundamental rights.

This action is brought pursuant to 42 U.S.C. § 1983 for the violation of Plaintiff's civil rights and under the Oregon Tort Claims Act for negligence.

## PARTIES

1.     Plaintiff is 33 years old. At all relevant times, he was a resident of the state of Oregon. He is proceeding under his initials.

2.     Defendant MARCIA ADAMS was the Assistant Director of Health Services at OYA starting in 2011, the OYA supervising physician in 2017, and Director of Health Services in 2018. She remains in that position currently. She was Edwards' supervisor from 2017 until he resigned. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Adams is sued in her individual capacity.

3.     Defendant FARIBORZ PAKSERESHT was the Director of OYA from 2012 through August 2017. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Pakseresht is sued in his individual capacity.

4.     Defendant JOSEPH O'LEARY was the Acting Director of OYA from September 2017 until February 2018. As the Director, he was employed by OYA, a state administrative

COMPLAINT - 3
(Case No. 6:26-cv-01364)

agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant O'Leary is sued in his individual capacity.

5. Defendant DAN BERGER was employed as the Superintendent of MacLaren from 2014 through 2025. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Berger is sued in his individual capacity.

6. Defendant DIANA MARTINEZ was employed as a Group Life Coordinator at MacLaren until approximately 2019. As a Group Life Coordinator, she was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Martinez is sued in her individual capacity.

7. Defendant JAMES SHELLEY is and was employed as a Youth Facility Supervisor at MacLaren. As a Youth Facility Supervisor, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Shelley is sued in his individual capacity.

8. Defendant COURTNEY SCHNITZER was employed as a Group Life Coordinator at MacLaren. As a Group Life Coordinator, she was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Schnitzer is sued in her individual capacity.

9. Edward Gary Edwards was employed by OYA, a state administrative agency, as a physician and was acting under color of state law. As discussed below, Edwards engaged in intentional conduct resulting in one or more of the following: mental injury, sexual assault, and/or sexual exploitation of Plaintiff as those terms are defined in ORS 12.117 or ORS 12.115. All

COMPLAINT - 4
(Case No. 6:26-cv-01364)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

conduct alleged herein occurred within the course and scope of his employment with OYA. Edwards is now deceased.

10.     The OYA is the state agency that operates MacLaren and other youth facilities. Under the Oregon Tort Claims Act, it is subject to liability for the torts of its officers, employees, and agents acting within the scope of their employment or duties.

## GENERAL ALLEGATIONS

### *"Doctor Cold Fingers"*

11.     In 1977, Edwards started working for OYA as a pediatrician providing medical examinations, diagnoses, and treatment to youth incarcerated at MacLaren. On information and belief, Edwards was named chief medical officer at MacLaren in 1997.

12.     On information and belief, Edwards was the primary medical provider at MacLaren through at least 2017. He was the only doctor working on site full-time at MacLaren during those years and oversaw medical care for all youth at MacLaren. OYA required every youth who entered MacLaren to participate in an initial intake examination, periodic physicals, and to receive medical care at the MacLaren clinic. MacLaren's medical clinic was the youths' only on-site source of medical care, and, as a result, all youth were required to have some level of physical contact with Edwards for anything from a sore throat to a broken bone.

13.     Edwards was infamously known as "Dr. Cold Fingers" by youth and staff for abusively touching detained youth—specifically young boys and men—with ungloved hands during exams. The abusive touching included digitally penetrating their anuses; stroking or masturbating their penises; and fondling their testicles. This abuse occurred during intake exams, follow-up physicals, and other medical visits. These encounters occurred in Edwards' exam room when no nurse or chaperone was required by OYA to be present.

COMPLAINT - 5
(Case No. 6:26-cv-01364)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

14. MacLaren staff made jokes about Edwards, and some corrections officers weaponized medical visits by threatening to send youth to "Dr. Cold Fingers" for disobeying staff directions. Youth who balked at Edwards' exams were threatened with "the hole" if they persisted in resisting.

15. Other staff members glossed over youths' inquiries about the medical necessity of Edwards' exams by explaining that he was a doctor and therefore he knew what he was doing.

16. Older adjudicated youth frequently warned newly arrived boys about Edwards.

17. As early as 1999, and repeatedly after that, multiple youth reported Edwards to MacLaren staff, including counselors. Staff and administrators at OYA took no action to protect youth from Edwards' sexual abuse; instead, OYA allowed the abuse to continue unabated in plain sight.

18. OYA empowered Edwards to perform the duties of a doctor and knew that he was in a position of authority, power, and trust over the youth at MacLaren, including Plaintiff. OYA retained the right to control the delivery of appropriate medical care, including the exam procedures used, proper patient privacy protections, the presence or absence of chaperones during medical exams, medical charting procedures, and reporting procedures for complaints from youth patients. Yet in the face of multiple complaints by multiple youth and widespread knowledge of Edwards' reputation—including his disturbing nickname—OYA failed to take even minimally protective steps, such as requiring a chaperone during "exams" or consulting with other medical professionals about the necessity of Edwards' invasive "procedures."

19. OYA's failure to act caused Plaintiff to believe that Edwards' behavior was standard medical care, a belief reinforced by OYA staff's repeated assurances. Some staff additionally informed Plaintiff that Edwards was not an OYA employee and that, as a contractor,

COMPLAINT - 6
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

OYA could not do anything about Edwards' conduct, leaving Plaintiff with the impression that OYA was not responsible for Edwards' actions. Plaintiff reasonably relied upon these assurances.

***OYA's Knowledge of Problems with Edwards***

20.     Defendants in this case knew or should have known that OYA has a long history of turning a blind eye to reports of staff sexually abusing youth at its facilities by failing to investigate reports of abuse, properly train staff, and implement or properly follow policies that would protect youth from sexual abuse by staff.

21.     Despite this knowledge, and even when faced with credible information that Edwards was engaging in inappropriate behavior with youth at MacLaren, Defendant Directors, Superintendents, and staff failed to take even minimal steps to address the issue. For example, Defendants failed to:

a.  Question or investigate why the only full-time doctor on staff at MacLaren was referred to as "Dr. Cold Fingers";

b.  Investigate complaints and concerns of youth and staff;

c.  Consult with any outside agency or resources regarding the medical necessity or appropriateness of the medical exams Edwards performed;

d.  Report Edwards' conduct to law enforcement;

e.  Report Edwards' conduct to Oregon Department of Human Services (ODHS);

f.  Report Edwards' conduct to the Oregon Medical Board or other supervisory agencies;

g.  Increase supervision of youth during encounters with Edwards;

h.  Educate staff regarding appropriate behavior between a doctor and a youth patient;

COMPLAINT - 7
(Case No. 6:26-cv-01364)

i.   Implement a functional grievance system;

j.   Track grievances or complaints regarding Edwards specifically; and

k.   Investigate grievances, including resolving founded investigations with appropriate discipline, such as terminating Edwards' employment.

22.   Indeed, despite credible, repeated concerns about Edwards, Defendants continued to promote him throughout his tenure at MacLaren, further indicating to the youth at MacLaren that OYA administration and staff approved of Edwards' conduct and viewed it as acceptable behavior from a medical professional.

*PREA Standards*

23.   When Congress passed the Prison Rape Elimination Act ("PREA") in 2003, it included standards to substantially reduce the risk of sexual abuse, harassment, and exploitation of youth in custody.

24.   Individual OYA Defendants were aware of the requirements of the PREA Standards for Juvenile Facilities.

25.   OYA adopted policies with respect to sexual abuse of youth that are designed to implement the PREA standards.

26.   In 2005, OYA adopted its own "zero-tolerance" policy toward sexual abuse and harassment in its youth facilities, aligning its practices with PREA principles even before the federal standards were finalized.

27.   In 2006, OYA created a Professional Standards Office ("PSO") to investigate allegations of sexual abuse and sexual harassment—a significant early implementation step toward PREA compliance.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

28.     In 2009, OYA established a full-time PREA coordinator in the PSO and requested and received technical assistance from the National Institute of Corrections and the Moss Group to assess OYA's compliance with PREA standards. In response to recommendations from these groups, OYA updated its zero-tolerance policy in 2010 and designated a Sexual Assault Response Team in every close-custody facility and parole/probation office to address the medical and mental health needs of victims of sexual abuse.

29.     Individual OYA Directors failed in their obligation to supervise, direct, and/or manage the PSO to ensure that (i) staff had proper training, including how to maintain PREA compliance; (ii) adequate staff to complete investigations; (iii) complaints were timely investigated and completed; and (iv) staff appropriately responded to PSO investigations, including reporting cases to the state police, disciplining OYA staff, and/or taking other remedial actions to prevent future abuse.

30.     Despite OYA's well known history of allowing the sexual abuse of youth in its care, individual Directors failed to ensure that OYA followed its own policies designed to protect youth, such as Plaintiffs, from sexual abuse by staff, such as Edwards and Schnitzer.

31.     Individual Directors and Superintendents were responsible for ensuring MacLaren's compliance with PREA and for enacting and enforcing OYA policies to implement PREA standards at MacLaren, including appointing a PREA Compliance Manager ("PCM") to coordinate the facility's compliance efforts.

32.     Individual Directors and Superintendents had an obligation to ensure that staff strictly adhered to PREA standards and OYA's own policies designed to prevent sexual abuse of youth by staff, including ensuring that staff reported any suspicion of sexual abuse to the PCM.

COMPLAINT - 9
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

33.    By failing to ensure that OYA's policies to prevent, investigate, and respond to sexual abuse were followed or enforced at MacLaren, and by ignoring credible information that Edwards was engaging in sexual abuse of youth under the guise of medical care, individual OYA Directors and Superintendents consciously disregarded widespread sexual abuse of youth in their care.

34.    On March 13, 2025, Oregon Department of Administration Services ("DAS") released an Investigation Report ("DAS Report") regarding allegations of mismanagement and governmental misconduct at OYA.

35.    The DAS Report uncovered evidence that during an audit of the PSO, "[s]everal current and past OYA employees of the PSO allegedly reported . . . problems with the youth cases to OYA administrators (past and present). These reports were allegedly met with an apathetic or passive response to the associated safety concerns of youth in custody."[1]

## ABUSE OF PLAINTIFF

### Dr. Edwards Abuse

36.    In 2010, when Plaintiff was 17 years old, the Clackamas County District attorney charged him in adult court with various crimes.

37.    Plaintiff accepted a plea offer that resulted in 160 months' incarceration in the legal custody of the Oregon Department of Corrections ("DOC").

38.    In July 2010, DOC placed Plaintiff in the physical custody of OYA.

39.    OYA initially placed Plaintiff at Hillcrest Youth Correctional Facility, where he remained until OYA moved him to MacLaren on January 19, 2016.

---

[1] Oregon Dep't of Admin. Servs. Investigation Report, Case No. 123520 at 7.

COMPLAINT - 10
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

40.    Plaintiff was 23 years old when he first encountered Edwards, shortly after arriving at MacLaren.

41.    Plaintiff saw Edwards for follow up medical care concerning a knee injury. Once in the examination room, Edwards instructed the nurse to wait outside, leaving Plaintiff alone with Edwards. Edwards directed Plaintiff to take off his pants. After examining Plaintiff's knee, Edwards fondled Plaintiff's genitals under the guise of medical care. Edwards did not wear gloves.

42.    Plaintiff saw Edwards a second time concerning his tonsils. Edwards felt Plaintiff's neck and then again instructed Plaintiff to remove his pants. Plaintiff followed Edwards' directions and removed his pants but left his boxers on. Under the guise of medical care, Edwards reached into the front of Plaintiff's boxers and fondled Plaintiff's penis with his bare hand.

43.    The third time Plaintiff saw Edwards, Edwards again directed Plaintiff to take off his pants. Under the guise of medical care, Edwards digitally penetrated Plaintiff's rectum without a legitimate medical purpose. Plaintiff had not complained to Edwards about any medical issue that would necessitate an invasive examination of his rectum. Edwards did not wear gloves when he put his finger in Plaintiff's rectum.

44.    After each encounter with Edwards, Plaintiff felt uncomfortable. But because Edwards was the primary doctor at MacLaren, and the encounters happened in a medical setting, Plaintiff assumed Edwards' conduct was medically necessary and appropriate, and Plaintiff did not recognize it as abusive. This belief was reinforced by the fact that  Plaintiff was aware that Edwards touched other youth in the same way and staff treated it as if it was normal.

45.    Plaintiff informed OYA staff about Edwards' conduct during medical evaluations, including that youth had nicknamed Edwards "Dr. Cold Fingers."  Staff were dismissive of Plaintiff's questions about Edwards' conduct, informing Plaintiff that Edwards was a doctor and

COMPLAINT - 11
(Case No. 6:26-cv-01364)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

knew what he was doing. Plaintiff reasonably relied on staffs' assurances that Edwards' conduct was consistent with acceptable medical care.

46.     PREA mandates that staff immediately report any knowledge, suspicion, or information they receive or observe regarding an incident of sexual harassment or abuse of youth at the facility. Defendants Martinez and Shelley failed to make the required report upon learning of Edwards' conduct. Instead, they told Plaintiff that Edwards was a contractor and not employed by OYA.

47.     At that time, Defendant Berger was the Superintendent of MacLaren. He was responsible for ensuring staff followed all policies and procedures regarding reporting and investigation of sexual abuse or suspicions of sexual abuse.

48.     When Plaintiff and other youth came to Berger and asked him why "Dr. Coldfingers" didn't wear gloves during examinations, Berger explained that he had heard similar stories about Edwards before, but told the youths that Edwards was a good doctor who had worked at MacLaren for a long time.

49.     Berger did not report Plaintiff's concerns about Edwards' conduct as required by PREA.

50.     Berger's response to the youths' questions and concerns, and OYA's general inaction, reinforced Plaintiff's belief that Edwards' conduct constituted appropriate and legitimate medical care and was therefore acceptable to OYA. As a result, Plaintiff continued to receive medical care at the MacLaren clinic, despite feeling uncomfortable with Edwards' conduct.

51.     Plaintiff came to understand for the first time that Edwards' conduct was in fact

COMPLAINT - 12
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

abusive and not legitimate medical care in approximately the summer of 2024, while incarcerated at Inverness Jail. Nevertheless, Plaintiff did not at that time know or recognize that OYA was responsible for Edwards' conduct and thus a cause of Plaintiff's injury.

52.    In the summer of 2025, Plaintiff learned of the widespread allegations against Edwards through the news and former OYA youth. At that time, Plaintiff discovered that OYA continued to employ Edwards for decades despite repeated reports of his abusive and inappropriate conduct towards youth. When Plaintiff learned that OYA could have prevented or stopped the abuse, but instead turned a blind eye, Plaintiff realized that OYA's inaction caused Plaintiff's injury.

53.    Edwards' conduct caused Plaintiff emotional distress, and he consequently struggles in his relationships, suffers from self-esteem issues, avoids seeing doctors, and dislikes being touched.

*Courtney Schnitzer Abuse*

54.    In 2016, OYA employed Defendant Schnitzer as temporary staff and assigned her to Plaintiff's living unit.

55.    Schnitzer began flirting with Plaintiff almost immediately upon encountering him on his living unit. In violation of OYA policy, she him her personal phone number. Schnitzer and Plaintiff began talking on the phone multiple times every week.

56.    Schnitzer knew that the camera system in kitchen on Plaintiff's living unit had blind spots. In early 2017, while in the kitchen with Plaintiff, Schnitzer positioned him in one of those blind spots and sexually abused him by engaging in vaginal intercourse with him.

COMPLAINT - 13
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

57.    Defendant Martinez knew that Schnitzer was engaged in an inappropriate relationship with Plaintiff, but rather than reporting Schnitzer – as required under OYA policy – Martinez warned Plaintiff not to get Schnitzer "in trouble."

58.    At the time, Plaintiff believed he was in a consensual relationship with Schnitzer and did not recognize the abusive nature of her conduct.

59.    While incarcerated at the Inverness Jail in the summer of 2024, Plaintiff began talking about Schnitzer with a counselor. Through counseling, Plaintiff learned that Schnitzer's conduct constituted sexual abuse.

60.    Plaintiff felt shame and humiliation about having been abused. He is still coming to terms with the extent of the impact of Schnitzer's abuse.

## FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Civil Rights Violation
### (Cruel and Unusual Punishment - Violation of 8th Amendment)
(Against All Individual Defendants)

61.    Plaintiffs realleges and incorporates herein paragraphs 1 through 63.

62.    All individual Defendants were working within the course and scope of their employment at the OYA when they engaged in the wrongful conduct alleged above.

63.    All individual Defendants were acting under color of state law.

64.    Edwards, Schnitzer, and all individual Defendants were working as staff members or employees of a youth correctional facility.

65.    Plaintiff was confined to MacLaren as a convicted adult at the time Edwards and Schnitzer abused him as alleged above.

***Edwards***

COMPLAINT - 14
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

66.    Edwards touched Plaintiff in a sexual manner without legitimate penological or medical justification or purpose.

67.    Edwards touched Plaintiff in a sexual manner that was not reasonably related to any legitimate government objective.

68.    Edwards acted for his own sexual gratification.

69.    Edwards' sexual abuse of Plaintiff constituted a substantial departure from professional judgment, practice, or standards.

70.    Edwards failed to provide for Plaintiff's reasonable safety while confined in an OYA facility by repeatedly engaging in predatory sexual conduct with Plaintiff.

*Schnitzer*

71.    Defendant Schnitzer touched Plaintiff in a sexual manner without legitimate penological justification or purpose.

72.    Schnitzer acted for her own sexual gratification.

73.    Schnitzer's sexual abuse of Plaintiff constituted a substantial departure from professional judgment, practice, or standards.

74.    Schnitzer failed to provide for Plaintiff's reasonable safety while confined in an OYA facility by engaging in predatory sexual conduct with Plaintiff.

*Shelley*

75.    Defendant Shelley was employed by OYA as a Group Life Coordinator.

76.    All staff at OYA are mandatory reporters and required to abide by PREA and OYA policies concerning reporting of sexual abuse.

COMPLAINT - 15
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

77.     Upon being informed that Edwards touched Plaintiff on his testicles, penis, and anus without legitimate medical purpose, Shelley was required to report Edwards to his supervisor or the PREA coordinator.

78.     Shelley did not make the required reports concerning Edwards and by failing to do so, failed to provide for Plaintiff's reasonable safety.

79.     Shelley's failure to report Edwards' conduct constituted a substantial departure from professional judgment, practice, or standards.

80.     Shelley failed to take reasonable available measures to abate the risk that Plaintiff would continue to be abused by Edwards.

81.     In so doing, Shelley put Plaintiff at substantial risk of suffering serious harm, namely, that Edwards would continue to sexually abuse Plaintiff.

82.     By failing to take reasonable, appropriate, and legally mandated steps to protect Plaintiff from Edwards' abuse, Shelley evinced deliberate indifference to Plaintiff's right to be free from sexual contact from Edwards.

*Martinez*

83.     Defendant Martinez was employed by OYA as a Group Life Coordinator.

84.     All staff at OYA are mandatory reporters and required to abide by PREA and OYA policies concerning reporting of sexual abuse.

85.     Upon being informed that Edwards touched Plaintiff on his testicles, penis, and anus without legitimate medical purpose, Martinez was required to report Edwards to her supervisor, the PSO, or the PREA coordinator.

86.     Upon learning or suspecting that Schnitzer was engaged in an inappropriate relationship with Plaintiff, OYA policy and PREA required Martinez to report Schnitzer's conduct.

COMPLAINT - 16
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

87. By not making the required reports concerning Edwards and Schnitzer, Shelley failed to provide for Plaintiff's reasonable safety.

88. Shelley's failure to report Edwards' and Schnitzer's conduct constituted a substantial departure from professional judgment, practice, or standards.

89. Shelley failed to take reasonable available measures to abate the risk that Plaintiff would continue to be abused by Edwards or Schnitzer.

90. In so doing, Shelley put Plaintiff at substantial risk of suffering serious harm, namely, that Edwards or Schnizter would continue to sexually abuse Plaintiff.

91. By failing to take reasonable, appropriate, and legally mandated steps to protect Plaintiff from Edwards' or Schnitzer's abuse, Shelley evinced deliberate indifference to Plaintiff's right to be free from sexual contact from Edwards or Schnitzer.

**Directors Pakseresht and O'Leary and Superintendent Berger**

92. Defendants Pakseresht, O'Leary, and Berger, as Directors and Superintendent, created the conditions at MacLaren under which Edwards' and Schnitzer's sexual abuse of Plaintiff was possible.

93. Those conditions put Plaintiff at substantial risk of suffering serious harm, namely, the risk that Plaintiff would be sexually abused by Edwards and Schnitzer.

94. Pakseresht, O'Leary, and Berger failed to take reasonable available measures to abate the risk that Plaintiff would be sexually abused by Edwards and Schnitzer.

95. Pakseresht, O'Leary, and Berger , in failing to act to protect Plaintiff from sexual abuse by Edwards and Schnitzer, failed to provide for Plaintiff's reasonable safety.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

96.    Pakseresht, O'Leary, and Berger's failure to take reasonable available measures, as alleged above, constituted a substantial departure from professional judgment, practice, or standards and served no penological justification.

97.    Pakseresht, O'Leary, and Berger evinced deliberate indifference to Plaintiff's right to be free from sexual contact from Edwards or Schnitzer, and constituted wanton and unnecessary infliction of harm.

***Adams***

98.    Defendant Adams is employed by OYA as the Medical Director and was Edwards' direct supervisor.

99.    As Medical Director, Adams was responsible for ensuring the safety of youth seen at the MacLaren medical clinic, including youth treated and seen by Edwards.

100.    As Medical Director, Adams created the conditions at the clinic that made Edwards' sexual abuse of Plaintiff possible.

101.    Those conditions put Plaintiff at substantial risk of suffering serious harm, namely, the risk that Plaintiff would be sexually abused by Edwards.

102.    Adams failed to take reasonable available measures to abate the risk that Plaintiff would be sexually abused by Edwards.

103.    Adams, in failing to act to protect Plaintiff from sexual abuse by Edwards, failed to provide for Plaintiff's reasonable safety.

104.    Adams' failure to take reasonable available measures, as alleged above, constituted a substantial departure from professional judgment, practice, or standards and served no penological justification.

COMPLAINT - 18
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

105.    In so doing all of the above, given the history at OYA, Adams evinced deliberate indifference to Plaintiff's right to be free from sexual contact from Edwards, and constituted wanton and unnecessary infliction of harm.

106.    No Defendants took reasonable, appropriate, and legally mandated steps to stop Edwards' and Schnitzer's sexual abuse from occurring.

107.    Pursuant to 42 USC §1988, Plaintiff is entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this action.

**SECOND CLAIM FOR RELIEF**
**Negligence under OTCA**
(All Plaintiffs Against State of Oregon)

108.    Plaintiff realleges and incorporates herein paragraphs 1 through 66.

109.    Defendant OYA, acting through its agent and/or employees, was negligent and at fault in one or more of the following ways:

a.    Failing to adequately investigate reports of inappropriate conduct by Edwards and/or Schnitzer;

b.    Failing to ensure staff monitored interactions between youth and Edwards and/or Schnitzer;

c.    Failing to train, enforce, or implement PREA standards designed to detect, prevent, stop, and/or investigate sexual misconduct of youth by staff;

d.    Failing to train, enforce, or implement OYA policies designed to detect, prevent, stop, and/or investigate sexual misconduct of youth by staff;

e.    Failing to investigate why Edwards was generally known by staff and youth as "Dr. Cold Fingers";

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

f.    Ignoring continuing and credible complaints from youth about ongoing sexual misconduct by Edwards;

g.    Failing to report Edwards' abuse to ODHS; and

h.    Failing to complete investigations so that complaints could reach adjudication and findings could be reported or disclosed to OYA leadership to ensure proper discipline (including reporting to law enforcement), training, and/or remediation.

110.    The above acts and omissions not only failed to prevent the known risk of staff subjecting youth to sexual abuse, but also actively allowed such misconduct to continue unabated for decades.

## NOTICE OF POTENTIAL CONSTITUTIONAL QUESTION

111.    As to any claim for relief, to the extent that any of the Defendants seek to reduce any compensatory damage verdict in favor of Plaintiff on the basis of statutory damages limits from *former* ORS 30.270 (repealed in 2009), Plaintiff avers that such damages limits are constitutionally inadequate as applied to this case.

## DAMAGES

112.    As a direct and proximate result of the conduct of Defendants, Plaintiff suffered economic and noneconomic damages, including:

a.    Mental and emotional injury; and

b.    Loss of Plaintiff's civil rights to be free from sexual contact by staff members while incarcerated at a youth correctional facility.

COMPLAINT - 20
(Case No. 6:26-cv-01364)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court will enter a Judgment in his favor, and against Defendants, as follows:

a.    Grant Plaintiff compensatory damages against Defendants in an amount to be determined at trial;

b.    Award Plaintiff reasonable costs, expenses, and attorney fees; and

c.    Grant Plaintiff such further relief as this Court deems just and equitable under the circumstances.

**DATED** this 6th day of July, 2026.

By:    s/ Norah Van Dusen
       **Norah Van Dusen**, OSB No. 180114
       **Jesse Merrithew**, OSB No. 074564
       **Rebecca J. Roe**, WSBA No. 7560
       **Hong Jiang**, WSBA No. 51914
       **Benjamin Gauen**, WSBA No. 41815
       **Sara Long**, OSB No. 224433
       Of Attorneys for Plaintiff

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092